IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 3:22-cr-109-DPJ-FKB

TERRY GRASSAREE

### GOVERNMENT'S OMNIBUS MOTION IN LIMINE

The United States of America, hereinafter "the Government," by and through Darren J. LaMarca, United States Attorney, and his undersigned Assistant United States Attorney, moves for an order that Terry Grassaree, hereinafter "the Defendant," and his counsel be precluded from mentioning, eliciting from any witness, or attempting to elicit from any witness, information relating to the topics described below in the presence of the jury without first obtaining permission from the Court.

1. **Any suggestion or accusation that a prosecutor or agent engaged in misconduct.**

Allegations of misconduct should be handled outside the presence of the jury so the Court can determine whether there is a factual foundation and probative value.

2. **The presence or absence of any particular person on the Government's witness list, or the Government's plan to call or not call a particular witness.**

There are many reasons why the Government will not call every witness on its list, including that the witness may become unavailable, the witness may lack credibility, the testimony may become cumulative, or the Government may simply run out of time. A jury could be confused if told that the Government listed a particular person on its witness list, but the person does not testify. In addition, although the Government, of course, retains its burden of proof, no negative inference—such as speculation about what that witness might have said—is permitted based on the Government's decision not to call a witness. *See United States v. Heard*, 709 F.3d 413, 421

1

(5th Cir. 2013) ("An adverse inference is not appropriate when the witness is equally available to both parties."); *United States v. Chapman*, 435 F.2d 1245 (5th Cir. 1970) ("The long-standing rule in this circuit is that any inference from a party's failure to call a certain witness equally available to both parties is impermissible."). The Defendant can subpoena any witness available to the Government. Thus, the Defendant should be precluded from commenting on or asking the jury to draw any negative inference from the absence of a particular witness.

3. **Any out-of-court statements made by the Defendant or any other person if offered to prove the truth of the matter asserted.**

When a defendant offers his own out-of-court statement, such as an email, letter, or text message, to prove the truth of the matter asserted, the statement is inadmissible hearsay. *See* Fed. R. Evid. 801, 802. Hence, the Defendant should be precluded from introducing self-serving hearsay statements through any witness—whether the Government's witness or his own witness—as doing so would allow the Defendant to introduce his own statements without being subject to cross-examination.

4. **Disputes over discovery, including the timing of the production of records to the Government by witnesses.**

Disputes over discovery are legal issues properly handled outside the presence of the jury. Discovery disputes do not speak to the Defendant's guilt or innocence. *See United States v. Fleming*, No. 3:19-CR-254-DPJ-FKB, 2022 WL 895920, at *3 (S.D. Miss. Mar. 25, 2022).

5. **Which other persons have, or have not, been charged in this or other cases.**

Whether another person has been charged in this or other cases is irrelevant to the guilt or innocence of the Defendant, who is charged in this case.

**6. Any argument that encourages jurors to ignore the law, not follow this Court's instructions, or otherwise violate their oaths as jurors.**

Jurors must follow the law. "[T]he right to make closing argument does not include the right to have counsel make an improper argument encouraging the jury to use its 'de facto power to refuse to apply the law as instructed by the court and exercise such power in dereliction of the jury's sworn duty.'" *United States v. Thompson*, 253 F.3d 700, 2001 WL 498430, at *16 (5th Cir. 2001) (citing other circuits' decisions); *see also United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997) ("We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."); *United States v. Sepulveda*, 15 F.3d 1161, 1190 (1st Cir. 1993) (stating that a trial judge "may block defense attorneys' attempts to serenade a jury with the siren song of nullification"). This request also encompasses any attempt by the defense to invoke the Defendant's age, health, education, or family needs that is intended to invoke sympathy from the jury. *See, e.g., United States v. Rainone*, No. 09 CR 206, 2013 WL 389004, at *1 (N.D. Ill. Jan. 31, 2013) (granting the government's motion to prohibit the defendant from introducing evidence of jury nullification, including "evidence or argument regarding [the defendant's] age, health, or family that is intended to invoke sympathy"). A jury's decision, especially during the guilt phase of a criminal trial, should be based upon the evidence and not upon its sympathy for either the defendant or the victim of a particular crime. *See Byrne v. Butler*, 847 F.2d 1135, 1139-40 (5th Cir. 1988).

**7. Plea negotiations, plea offers, or the rejection of a plea offer.**

The substance of plea negotiations, plea offers, or a rejection of a plea offer is irrelevant.

**8. Potential punishment or any other consequences that might result from a conviction.**

References to possible punishment would be an impermissible appeal to the jury's sympathy and are irrelevant. "The jury's function is to find the facts and to decide whether, on

3

those facts, the defendant is guilty of the crime charged." *Simmons v. United States*, 512 U.S. 573, 579 (1994) ("It is well established that when a jury has no sentencing function, it should be admonished to reach its verdict without regard to what sentence might be imposed." (footnote, citation, and quotation marks omitted)). "Information regarding the consequences of a verdict is therefore irrelevant to the jury's task." *Id*. "Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion." *Id*.; *see also United States v. Buchner*, 7 F.3d 1149, 1153 (5th Cir. 1993) ("The jury is not allowed to consider a defendant's potential sentence as part of its deliberations." (citation omitted)); Fifth Circuit Pattern Jury Instruction 1.20 (Instructing the jury that the potential penalties faced by the defendant "should not enter your consideration or discussion.").

9. **Defense counsel's personal opinions of, or relationship with, the Defendant.**

Defense counsel's personal opinions of or relationship with the Defendant are irrelevant and would constitute impermissible testimony on behalf of counsel unless defense counsel takes the stand as a witness. Mississippi Rule of Professional Conduct 3.4 states in pertinent part,

> A lawyer shall not:
>
> (e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused…

*Id.* "Defense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case. *United States v. Young*, 470 U.S. 1, 8–9, 105 S. Ct. 1038, 1043, 84 L. Ed. 2d 1 (1985).

### 10. The use of interview reports prepared by law enforcement to impeach Government witnesses or otherwise improper use of FBI 302s.

ATF Reports of Investigation ("ROIs"), FBI 302s, and DEA-6 reports are not statements of a witness under the Jencks Act. FBI 302s (the most commonly used report), ATF ROIs, and DEA-6 reports are frequently used by agents to note witness interviews, among other uses. In order to provide for full and fair cross-examination, the Jencks Act requires that after a witness for the United States testifies on direct examination, the Government must provide the defense with any statements made by the witness that relates to the subject of his or her testimony. 18 U.S.C. § 3500. A statement within the meaning of the Jencks Act is defined as "a written statement made by said witness and signed or otherwise adopted or approved by him"; a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury. 18 U.S.C. § 3500(e).

In *Palermo v. United States*, the Supreme Court held that because the Jencks Act is meant to restrict the defendant's use of discoverable statements to impeachment. 360 U.S. 343, 349 (1959). "[O]nly those statements which could properly be called the witness' own words should be made available to the defense." *Id.* at 352. The Court went on to elaborate that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *Id.* at 352-53.

Consistent with *Palermo*, FBI 302s are not discoverable under the Jencks Act because they are not statements of the witness within the meaning of the statute.[1] Unless the witnesses have reviewed and adopted the report -- which was not the practice in this case -- the 302s are not statements of the witness under subsection (e)(1) of the Jencks Act. Moreover, because the 302s

---

[1] The FBI 302s would be discoverable under the Jencks Act as a statement of the agent, if the agent who prepared it is called as a witness to testify regarding the subject matter contained in the report.

are written after interviews are completed and reflect the thought processes and interpretations of the agent, they do not constitute a contemporary and substantially verbatim recital of the witness's statement under subsection (e)(2).

Every circuit court to address the question has held that agent reports of the investigation generally are not discoverable under the Jencks Act. *United States v. Price*, 542 F.3d 617, 621 (8th Cir. 2008) (holding that absent evidence that the witnesses "approved or adopted" notes of witness interviews, "these documents are not discoverable under . . . the Jencks Act"); *United States v. Jordan*, 316 F.3d 1215, 1255 (11th Cir. 2003) (holding that FBI 302s "and other writings made by investigating agents" "are not Jencks Act statements of the witness unless they are substantially verbatim and were contemporaneously recorded, or were signed or otherwise ratified by the witness"); *see United States v. Cole*, 634 F.2d 866, 867 (5th Cir. 1981) (holding "[A]lthough the notes may have contained phrases or isolated sentences identical to the language used by the witness, they were not a 'substantially verbatim report' of the interview."); *United States v. Donato*, 99 F.3d 426, 433 (D.C. Cir. 1996) ("[T]he agent's notes and FBI report . . . are not covered by the Jencks Act."); *United States v. Roseboro,* 87 F.3d 642, 646 (4th Cir. 1996) ("[T]he district court's finding that the FBI 302 Report was not a Jencks Act statement is not clearly erroneous."); *United States v. Farley*, 2 F.3d 645, 654-55 (6th Cir. 1993) (holding that because there was "no proof that the statement was adopted or approved . . . it was not clearly erroneous . . . to deny defendants access to the FBI 302"); *United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993) ("We hold that the FBI Forms 302 were not discoverable statements under the Jencks Act."); *United States v. Morris*, 957 F.2d 1391, 1402 (7th Cir. 1992) ("[T]he documents are not statements producible under the Jencks Act because they were neither signed nor adopted . . . and further because they are not a verbatim recital . . . but rather only an agent's summary."); *United States v.*

*Foley*, 871 F.2d 235, 239 (1st Cir. 1989) ("It is plain that the 302s are not substantially verbatim recitals . . . and recorded contemporaneously."); *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (because "the summaries represent . . . the *agents*' selection of certain information . . . the district court properly characterized the summaries as non-Jencks Act material"), *abrogated on other grounds by Ross v. Oklahoma,* 487 U.S. 81 (1988).

Although production of FBI 302s was not required, in this case the Government has provided broad discovery, including 302s for the Government's witnesses at trial. In this circumstance, the defense should be limited to using those 302s consistent with the law and rules of evidence. In particular, the defense must be precluded from introducing the contents of the 302s to impeach witnesses on the basis of inconsistent statements because the 302s are not the statements of the witnesses themselves.

Moreover, the Defendant must be precluded from publishing the contents of the 302s to the jury, or otherwise suggesting to the jury that the 302 is a statement of the witness. To allow otherwise would subvert the meaning of the Jencks Act and the Supreme Court's decision in *Palermo* holding that it would "be grossly unfair to allow the defense to use statements to impeach a witness which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations, and interpolations." 360 U.S. at 350.

The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an FBI 302.[2] However, if the defense is not satisfied with the witness's answer, the defense may not publish or introduce the contents of the 302 as a prior inconsistent statement. *See United States v. Brika*, 416 F.3d 514, 529 (6th Cir. 2005) (holding that "such documents [FBI 302s]

---

[2] Likewise, in the appropriate circumstances and with the proper foundation, the defense may attempt to refresh the witness's recollection by showing the witness the 302, but only if the defense does so in a manner that does not imply that the 302 is the witness's own statement.

7

have been deemed inadmissible for impeaching witnesses on cross-examination"), *abrogated on other grounds by United States v. Booker*, 543 U.S. 222 (2005); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that because "the written statement of the FBI agent was not attributable to [the witness]" it was "properly rejected as a prior inconsistent statement"); *United States v. Hill*, 526 F.2d 1019, 1026 (10th Cir. 1975) (upholding the trial court's decision to "not allow counsel to use the FBI statement to impeach a witness because the witness did not prepare or sign the document and probably never adopted it"). Moreover, the defense may not use the 302 in a way that suggests to the jury that the 302 is a statement of the witness. *See United States v. Marks*, 816 F.2d 1207, 1210-11 (7th Cir. 1987) (holding that where defense counsel read from an FBI 302 during cross-examination in a way that would "seem authoritative" and potentially confuse the jury, the judge was entitled to require the witness be shown the 302 and given the opportunity to adopt or reject it as a statement, although such a practice was no longer required by the federal rules of evidence).

The United States is committed to providing broad discovery in this matter, and has provided FBI 302s for its witnesses at trial although such production was not required under the Jencks Act. In turn, the defense must use those FBI 302s in accordance with the law and rules of evidence, and they should not be permitted to introduce the FBI 302s, publish them to the jury, or otherwise suggest to the jury that the 302s are statements of the witnesses.

The United States moves this Court to instruct Defendant accordingly.

**11. Specific instances of prior good acts.**

Specific instances of good conduct or good character are irrelevant to the conduct charged in the Indictment. Whether the Defendant was an otherwise law-abiding citizen is not probative of his conduct in connection with the crime charged in this case. *See* Fed. R. Evid. 404(a), 405(a);

*United States v. Cleveland*, No. 96-207, 1997 WL 253124, at *2 (E.D. La. May 14, 1997) ("[A] defendant may not seek to establish his innocence through proof of the absence of criminal acts on specific occasions." (quotation marks and citation omitted)); *United States v. Hill*, 40 F.3d 164, 168-69 (7th Cir. 1994) (holding that "specific instances of law-abidingness" are inadmissible unless "law-abidingness [i]s an essential element of the charge or defense").  In other words, there are no circumstances under which the Defendant's prior good acts are relevant to whether he engaged in the criminal conduct charged in this case. Accordingly, specific instances of the Defendant's good conduct should be excluded as irrelevant.

12. **The existence or content of the Government's motions and any order of this Court in response to those motions.**

The existence and content of this motion and other motions filed by the Government are irrelevant to the matters to be decided by the jury.

           Respectfully submitted,

           DARREN J. LAMARCA
           UNITED STATES ATTORNEY

By:   /s/ *Kimberly T. Purdie*
       KIMBERLY T. PURDIE
       Assistant U.S. Attorney
       MS Bar No. 104168
       501 E. Court Street, Suite 4.430
       Jackson, Mississippi 39201
       Phone: 601-965-4480
       Kimberly.Purdie@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day, I have filed the foregoing Motion with the Clerk of the Court using the electronic filing system, ECF, which sent notification to all parties of record.

This the 3rd day of July 2023.

                                              */s/ Kimberly Purdie*
                                              KIMBERLY PURDIE
                                              Assistant United States Attorney